```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                  07-MDL-1836 (JMR/FLN)
                   10-CV-644 (JMR/FLN)
```

```
In re:  Mirapex Products      )
Liability Litigation          )
- - - - - - - - - - - - - - - )
                              )
Nabil Gazal                   )
                              )
     v.                       )          ORDER
                              )
Boehringer Ingelheim          )
Pharmaceuticals, Inc.;        )
Pfizer, Inc.;  Pharmacia      )
Corporation; and Pharmacia    )
& Upjohn Company LLC          )
```

This matter is before the Court on defendants' motion for summary judgment. The motion is granted.

I. <u>Background</u>[1]

Plaintiff, Nabil Gazal, is a wealthy 62-year-old Australian citizen. He is the owner of a successful construction company, and has a lifelong history of recreational gambling.

In 1999, plaintiff consulted with a doctor who suggested he might be suffering from Parkinson's disease. He was formally diagnosed with the disease on September 4, 2002, by doctors at the Baylor College of Medicine's Parkinson's Disease Center and Movement Disorders Clinic. The doctors prescribed Mirapex as the

---

[1] All facts are taken in the light most favorable to plaintiff, the non-moving party. <u>See</u> Fed. R. Civ. P. 56.

drug to treat his symptoms.[2]  He took the drug from November 12, 2002, until June 2009.  His use of the drug, the information he had, and the dates upon which he acquired this information underlie this lawsuit and the Court's ruling.

Beginning in December 2002, after being prescribed Mirapex, plaintiff claims his gambling losses increased 10 to 15 percent.[3]  In August 2003, the plaintiff returned to Baylor and reported his Parkinson's symptoms had improved.  He did not mention his increased gambling, nor did his doctor ask or warn him about it.  On April 8, 2005, plaintiff returned to Baylor.  On this visit, he first reported increased compulsiveness, increased gambling, and that he could not "leave the table."  (Affidavit of Kevin Krist, Ex. 13.)  His doctor renewed his prescription for Mirapex, but gave him a lower dose based on his reported gambling problem.

On July 11, 2005, the Mayo Clinic published a study suggesting a link between Mirapex and compulsive gambling ("the Dodd/Mayo study", Krist Aff. Ex. 20).  The article received considerable

---

[2] Mirapex is a dopamine agonist, developed by defendants in the 1990s.  In 1997, Mirapex was approved by the United States Food and Drug Administration for treatment of Parkinson's symptoms.  Mirapex was not marketed in Australia at the time, so plaintiff obtained his supply in the United States.

[3] This information is based on the plaintiff's estimates.  He claims that, prior to taking Mirapex, he gambled up to $20,000 during weekly card games, and gambled an additional $30,000 monthly at a casino.  The plaintiff avers that, after taking Mirapex, he lost interest in winning, opting instead, to simply gamble until he ran out of money.

media attention, and at some point "in late 2005," plaintiff acknowledges becoming aware that Mirapex might cause compulsive gambling. (Plaintiff's Memorandum at 8; Krist Aff. Ex. 1, ¶ 10.)

On November 4, 2005, one of plaintiff's Australian physicians concluded Mirapex might be responsible for plaintiff's increased and uncontrolled gambling. The plaintiff was hospitalized for two weeks in November 2005, in an effort to stop his use of Mirapex. The plaintiff, however, contends he was addicted to the product and unable to withdraw from it.[4]

The plaintiff made no further effort to quit Mirapex for three years. Instead, on May 15, 2006, he wrote to two Australian casinos requesting they no longer accept his business. He explained, "[d]ue to negative side effects from my serious medication, I am unable to be in control of my gambling, which has resulted in huge losses in the past few years." (Affidavit of Scott A. Smith, Ex. 9, 10.) The casinos agreed. Plaintiff also wrote to the card players, who agreed not to gamble with him. (Smith Aff. Ex. 13.)

Nonetheless, his gambling habit worsened. In May 2007, he visited a neurologist to discuss side effects of his medications. Plaintiff told the doctor he intended to "test[] his compulsive gambling out at the casino tomorrow night!" (Id., Ex. 14.) On

---

[4] Plaintiff offers no expert or medical testimony to support his self-diagnosis that he was addicted to Mirapex.

3

September 4, 2007, plaintiff returned to Baylor and reported that he had "lost millions of dollars" and was experiencing "family problems." (Krist Aff. Ex. 16.) The Baylor physicians renewed his Mirapex prescription. Plaintiff continued to gamble. In November 2008, he was hospitalized again for a week in an effort to stop taking Mirapex, but was unable to do so. A subsequent two-week hospitalization, in May and June of 2009, was successful.

Plaintiff brought this action in Texas state court in June 2009, claiming over $20 million in gambling losses. In January 2010, shortly after plaintiff dismissed the only non-diverse defendant, the remaining defendants removed the case to federal court. In March 2010, the Judicial Panel on Multidistrict Litigation transferred the action to this Court as part of the Mirapex Products Liability Multidistrict Litigation ("MDL").

Defendants move for summary judgment, arguing plaintiff's claims are time-barred.

II. Analysis

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246 (1986). The party opposing summary judgment may not rest upon the allegations in its pleadings, but must produce significant probative evidence demonstrating a genuine

4

issue for trial. See Anderson, 477 U.S. at 248-49.

    A.  <u>Products Liability</u>

This Texas-based action is in federal court based on the diversity of the parties. As such, the Court applies Texas law, including its statutes of limitation, which are considered substantive law. <u>Walker v. Armco Steel Corp.</u>, 446 U.S. 740, 749-50 (1980).

Texas law provides that personal injury suits are to be commenced within two years after the date the cause of action accrues. Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a); <u>Childs v. Haussecker</u>, 974 S.W.2d 31, 36 (Tex. 1998). The defendants contend the plaintiff's claims accrued more than two years prior to the date the case was filed. Under Texas law, the date the claim accrued "may be determined as a matter of law if reasonable minds could not differ about the conclusion to be drawn from the facts." <u>Id.</u> at 44.

As a general rule, "a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." <u>Childs</u>, 974 S.W.2d at 36. There is an alternative: if plaintiff's injury is "inherently undiscoverable," as in the case of a latent illness such as silicosis, the discovery rule applies. <u>Id.</u> at 37. The discovery rule, an exception to the general rule, defers accrual until plaintiff discovers both "the injury and that it was

likely caused by the wrongful acts of another." Id. at 40. Such a claim may accrue even if plaintiff does not appreciate the seriousness of the injury, or know the identity of the wrongdoer. Id.

This Court finds that, whether it applies either the general or the discovery rule, plaintiff's personal injury claims are time-barred. Plaintiff acknowledges he first became aware of his gambling problem in 2002, and no later than 2003. He was also aware, as early as 2005 - and no later than 2006 - of a possible link between pathological gambling and Mirapex. He could have filed this lawsuit at those times. Instead, he waited until 2009. Accordingly, under either rule, his claims are time-barred.

Plaintiff disagrees. He asks this Court to adopt a new version of the Texas discovery rule which will allow his claims to proceed. He first posits that Texas law requires "objective verification of a causal connection" before a claim will accrue. (Pl. Mem. at 14, citing Childs, 974 S.W.2d at 43.) He then assumes, without citation to any legal or factual support, that no "objective verification" of causation is possible in a Mirapex case. Therefore, plaintiff argues, it was impossible for him to have discovered Mirapex caused his injury until researchers published the first "properly designed and executed epidemiological studies indicating more than a doubling of the relative risk of disease or injury." (Pl. Mem. at 15, internal quotations omitted.)

6

He extracts his "doubling of the risk" requirement from the case of Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706 (Tex. 1997).

This Court finds plaintiff's argument is premised on a misreading of both Childs and Havner. First, Childs does not show Texas has adopted a test of "objective verification" of causation before a claim accrues. Far from it: Texas law requires only that "plaintiff's symptoms manifest themselves to a degree or for a duration that would put a reasonable person on notice that he or she suffers from some injury," and that plaintiff knows, or in the exercise of reasonable diligence should have known, the injury is caused by another's wrongful acts. Childs, 974 S.W.2d at 40. Claim accrual does not require a confirmed medical diagnosis, id. at 42, much less an epidemiological study. In fact, Childs says nothing about epidemiological studies. "Objective verification" does not mean a scientific study is required before a claim will accrue; it simply means the limitations clock does not start running the first time a plaintiff entertains subjective, unverified suspicions about what is causing his illness. Id. at 43.

The facts in this case provide overwhelming "objective verification" of a potential link between Mirapex and plaintiff's gambling. As early as 2002, plaintiff complained of the precise compulsive gambling symptoms which are the gravamen of his

7

complaint. He directly reported them to his doctors, who acknowledged a connection between the drug and gambling. His physicians reduced his dosage in 2005, and tried to wean him from Mirapex in 2006. Accordingly, the holding in Childs alone would bar plaintiff's claim.

Plaintiff's reliance on Havner is equally unavailing. Havner, an appeal of a jury verdict, says absolutely nothing about statutes of limitations, claim accrual, or pleading standards. Like Childs, it in no regard requires a published scientific study before a plaintiff can plead causation. Rather, it considered whether and how epidemiological studies could serve as evidence of causation at trial.

The epidemiological studies introduced into evidence in Havner found no statistically significant correlation between defendant's drug and the type of injury plaintiff suffered; however, plaintiff's experts re-analyzed the studies' data and testified to the contrary. The Texas Supreme Court concluded properly designed epidemiological studies, showing a relative risk great enough to exclude alternative causes including chance, might be sufficient to raise a fact issue on causation if plaintiff could show he was similar to the patients in the study. Havner, 953 S.W.2d at 720. The Texas court further found a study which could not exclude chance, even if accompanied by an expert's ipse dixit, was insufficient to prove causation. See id. Applying these

principles, the court found the studies in Havner were insufficient to support the jury's verdict. The court expressly declined to decide "whether epidemiological evidence with a relative risk less than 2.0, coupled with other credible and reliable evidence, may be legally sufficient to support causation." Id. at 719.

Plaintiff argues that absent a properly designed epidemiological study, any complaint that Mirapex caused his gambling would have been dismissed for failure to state a claim. Therefore he argues his claim did not accrue until June 4, 2008, with the publication of the "Dominion Study."[5] If the plaintiff is correct, his lawsuit is timely.

The plaintiff is mistaken. Childs and Havner provide no support for plaintiff's proposed discovery rule. Plaintiff confuses the evidence needed to prove causation at trial, with facts needed to put him on notice that he has a claim in the first place. No court, in Texas or elsewhere, has yet required a plaintiff who is aware of both his injury and the likely cause, to wait to file a lawsuit until the scientific community has published a suitably reliable epidemiological study finding a doubling of the relative risk. Such a rule would put claim accrual in the hands of

---

[5]The Dominion Study was the first large-scale systematic study of Mirapex and impulse-control disorders. It concluded that patients taking Mirapex experienced a relative risk of developing a gambling disorder that was too great to be explained by chance or other causes. (See Krist Aff. Ex. 18.)

9

medical researchers, a result surely not intended by the Texas legislature.

Plaintiff's claim is time-barred, unless the statute is tolled. Plaintiff offers five reasons to toll the statute: the continuing tort doctrine, Texas' constitutional "open courts" provision, the ripeness doctrine, mental disability, and quasi-estoppel. The Court will address each in turn.

    a.  <u>The Continuing Tort Doctrine</u>

Plaintiff argues his continued ingestion of Mirapex constitutes a continuing tort on the part of the defendants. The plaintiff advances the case of <u>Upjohn Co. v. Freeman</u>, which holds that "[a] cause of action for a continuing tort does not accrue until the defendant's tortious act ceases." <u>Upjohn Co. v. Freeman</u>, 885 S.W.2d 538, 542 (Tex. App. 1994). The case certainly holds that, in the pharmaceutical context, "continued use of an injury-producing medication may be a continuing tort." <u>Id.</u> The plaintiff, however, apparently reads out of <u>Freeman</u> its explicit limitation that the doctrine applies only as long as a plaintiff is unaware of the effect the drug is having on him. <u>Id.</u> at 542-43.

This is precisely not the case here. Here, plaintiff admits he knew, anecdotally, of a link between Mirapex and gambling in November, 2005, when he heard of the link reported in the Dodd/Mayo study. He was clearly aware of the link later in November, 2005, when his Australian physician hospitalized him in an effort

to wean him from the drug in order to end his compulsive gambling. And he was absolutely aware of the tie between Mirapex and his own gambling when, in May 2006, he wrote to casinos and his friends and told them of its effect on him. The Court finds that, in light of this evidence, no reasonable jury could conclude the plaintiff was unaware of the gambling problems he was experiencing, and a link between them and Mirapex, until June 4, 2008. The continuing tort doctrine, even if applicable, does not save plaintiff's claim.

      b.   Texas' Constitutional "Open Courts"

Plaintiff asks the Court to conclude Texas' statute of limitations should be tolled by the Texas Constitution's "open courts" provision. That provision states "[a]ll courts shall be open," and every injured person "shall have a remedy by due course of law." See Tex. Const. art. I, § 13. The Texas Supreme Court has squarely confronted this provision and interpreted it to "protect[] a citizen . . . from legislative acts that abridge his right to sue before he has a reasonable opportunity to discover the wrong and bring suit." Neagle v. Nelson, 685 S.W.2d 11, 12 (Tex. 1985) (finding a statute of limitations unconstitutional as applied to a patient unable to discover, within two years of surgery, that doctors left a surgical sponge in his abdomen). Thus, in cases where it is impossible for a plaintiff to discover his injury and file a suit within the limitations period, the open courts provision may toll the statute. Id. However, where plaintiff

discovers the injury within the limitations period and has a reasonable time to bring suit, the "open courts" provision does not apply. See Martz v. Weyerhauser Co., 965 S.W.2d 584, 589 (Tex. App. 1998).

Martz is fatal to plaintiff's claim. Even assuming the "open court" provision applies - and the Court does not so assume - the plaintiff was aware of both his gambling compulsion and its likely cause no later than May 2006. It was not, therefore, impossible for him to discover his injury and bring a timely suit. Here, plaintiff resurrects his argument that he could not sue defendants until the Dominion Study was published. For reasons already stated, this is incorrect as a matter of fact and law.[6] Plaintiff was never deprived of an opportunity to seek redress in the courts. Accordingly, the "open courts" provision of the Texas Constitution does not preserve plaintiff's claim.

    c.  <u>Claims Unripe Until the Dominion Study</u>

Plaintiff next argues his claims were not ripe until the Dominion Study was published. This argument represents plaintiff's third bite of the Dominion apple. The now-worn argument remains unavailing.

---

[6] More than 50 Mirapex gambling cases were filed in 2006, prompting the Judicial Panel on Multidistrict Litigation to create this MDL on June 25, 2007. The cases proceeded through coordinated discovery and motion practice in 2007 and early 2008. In July 2008, shortly after the Dominion Study was released, the first bellwether case was tried to verdict in this Court.

"Under the ripeness doctrine, we consider whether, at the time a lawsuit is filed, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote." Waco Indep. Sch. Dist. v. Gibson, 22 S.W.3d 849, 852 (Tex. 2000). The question is whether plaintiff has a "concrete injury." Id. "A case is not ripe when determining whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass." Id.

For the reasons set forth above, this Court finds plaintiff's claims were fully ripe no later than 2006. He first took Mirapex in November 2002. He experienced symptoms of compulsive gambling one month later, and told his doctors about the increasingly severe symptoms in April 2005. He heard of a study associating the drug with his observed-problem in 2005, and was advised by his doctor of a link between Mirapex and gambling in November 2005. He was hospitalized in late 2005 in an unsuccessful effort to wean him off Mirapex, and in May 2006, wrote to casinos asking them to refuse his business because his medication made him gamble uncontrollably. At that time, plaintiff had a manifest, severe, compulsive gambling problem, which he had reason to believe, and expressed the belief, was attributable to Mirapex.

Plaintiff had a "concrete injury" no later than May 2006. There was nothing contingent, speculative or remote about his

13

symptoms, and no future events were needed to give rise to his claim. The existence, or non-existence, of a particular type of scientific study of Mirpaex was and is wholly irrelevant. Accordingly, plaintiff's challenge to the limitations statute on ripeness grounds fails.

        d.    <u>Mental Disability</u>

Plaintiff argues Mirapex rendered him mentally incompetent to pursue his rights. He urges the Court to toll the statute of limitations until June 2009, when he finally stopped taking the drug.

One of unsound mind is entitled to toll the statute of limitations during the period of disability. Tex. Civ. Prac. & Rem. Code Ann. § 16.001. In the present context, Texas law defines "unsound mind" as equivalent to legal incompetence; that is, "persons who are mentally incompetent to care for themselves or manage their property and financial affairs." <u>Hargraves v. Armco Foods, Inc.</u>, 894 S.W.2d 546, 547 (Tex. App. 1995); <u>Freeman v. Am. Motorists Ins. Co.</u>, 53 S.W.3d 710, 713 (Tex. App. 2001). The tolling provision protects those "without access to the courts," who are "unable to participate in, control, or understand the progress and disposition of their lawsuit." <u>Hargraves</u>, 894 S.W.2d at 548; <u>see also</u> <u>Ruiz v. Conoco</u>, 868 S.W.2d 752, 755 (Tex. 1993). To survive summary judgment, plaintiff must come forward with either (1) evidence permitting the Court to conclude he lacked the

mental capacity to pursue litigation, or (2) a fact-based expert opinion to the same effect. See Chavez v. Davila, 143 S.W.3d 151, 154 (Tex. Ct. App. 2004).

Plaintiff offers the affidavits of his wife, son, and his treating physician, Dr. Eli Zeltzer. The Court finds the proffered evidence would be insufficient to allow a reasonable jury to conclude the plaintiff lacked the requisite mental capacity during the limitations period.

Dr. Zeltzer's affidavit reflects he has been plaintiff's treating physician since 1996. Dr. Zeltzer is not a psychiatrist. There is no evidence plaintiff has ever been formally assessed for, diagnosed with, or treated for any mental illness. In this Court's view, Dr. Zeltzer is not qualified to render an expert opinion about plaintiff's state of mind. See Chavez, 143 S.W.3d at 155. However, even if the Court were to consider Dr. Zeltzer qualified, the substance of his affidavit does not establish plaintiff was of unsound mind. Dr. Zeltzer opines plaintiff was "completely unable to manage his compulsive behavior," that he "became verbally abusive and unreasonable toward his wife and children," and that he was "completely irrational and overwhelmed" by "anxiety, depression, gambling addiction, abnormal addiction and other generalized behavioral problems." (Krist Aff. Ex. 7, ¶¶ 3, 5.)

Plaintiff's son, Nabil Gazal Jr., states that "[b]y early 2004 we all felt that something was seriously wrong." He states

15

plaintiff "didn't even seem like the same person. He could not make decisions and was avoiding the office." He ignored his sons' pleas for assistance with the business, and avoided confronting the problems his gambling addiction was causing. Plaintiff's son described him as "anxious, confused, angry, unstable and irrational." (Krist Aff. Ex. 8, ¶ 5.) His wife stated it "seemed as if Nabil had lost his mind." (Krist Aff. Ex. 9, ¶ 8.)

These affidavits do not undermine the following facts: during all of these events, the plaintiff ran and managed an extremely successful construction company. Compare Krist Aff. Ex. 8 at ¶¶ 4, 5, 9 with Hargraves, 894 S.W.2d at 548 (plaintiff who was able to work, and to file a workers' compensation claim, not under a mental disability). He self-diagnosed his problem with Mirapex as early as 2002 when he reported his gambling losses increased. He regularly sought treatment from a number of neurological medical specialists, none of whom ever alluded to mental incompetence. He was clear enough in mind to write to casinos and friends asking him to bar him from gambling. These are not the acts of one who is mentally incompetent, and no competent expert suggests they are.

Although Dr. Zeltzer and plaintiff's son claim the family effected a "de facto takeover" of the business (see Krist Aff. Ex. 8 at ¶ 5), and it is clear plaintiff was hospitalized several times at his family's urging, there is no evidence plaintiff's family took any steps during the limitations period to have him declared

16

legally incompetent, or to obtain the power to make legal decisions for him. Compare Ruiz, 868 S.W.2d at 753 (plaintiff adjudicated incompetent from date of head injury). Plaintiff was clearly aware he had a gambling problem and took steps -- albeit unsuccessfully -- to address it. His contemporaneous insight into his situation weighs against a finding of legal disability. See Wagner v. Texas A & M Univ., 939 F. Supp. 1297, 1318 (S.D. Tex. 1996) (plaintiff who wrote "lengthy and insightful letters concerning his situation" and negotiated a retirement package was not of unsound mind).

However difficult these emotional and behavioral issues may have been for plaintiff and his family, they simply do not, as a matter of law, rise to the level of insanity or legal incapacity. The Court finds no basis to toll the statute on the grounds of mental disability.

      e.   Quasi-Estoppel

Plaintiff asks the Court to estop the defendants from asserting the statute of limitations, because during the limitations period they denied Mirapex could cause compulsive behaviors. The Court declines this invitation. It does so because there is simply no support for this argument. Plaintiff premises this request on Childs, which, as noted above, is distinguishable.

In Childs, the plaintiff's own doctors told him his injuries were not work-related. Partly as a result thereof, many years went by before he obtained a correct diagnosis. The court found a

17

question of fact as to when plaintiff knew his injury was work-related. Childs, 974 S.W.2d at 34-35.

This case is completely different from Childs. In Mr. Gazal's case, his physicians repeatedly told him, early, often and consistently that his compulsive gambling might be related to his use of Mirapex. His dosage was reduced in 2005 for this reason. He knew of news reports in 2005 suggesting a link between Mirapex and gambling. He was hospitalized three times beginning in 2006 in an effort to stop taking Mirapex.

The Court recognizes the defendants may have denied the link which was so clear to the plaintiff and his doctors. But there is no way the plaintiff can credibly claim either he or his doctors relied on any of defendants' denials during the limitations period. Rather, it appears plaintiff's doctors were well aware of a potential link and advised him as much. Defendants' internal statements and public denials simply had no effect on plaintiff's knowledge of his injury or his claim. Accordingly, the Court has no basis to find defendants are estopped from relying on the statute of limitations.

Defendants have conclusively established that Texas' statute of limitations applies, and is not to be tolled for any reason. Accordingly they are entitled to summary judgment.

B. Breach of Warranty

The majority of Texas intermediate appellate courts hold a

buyer is required by statute to notify a remote manufacturer of a breach of warranty claim. Tex. Bus. & Comm. Code § 2.607(c)(1); see U.S. Tire-Tech, Inc. v. Boeran, B.V., 110 S.W.3d 194, 199 (Tex. App. 2003); Wilcox v. Hillcrest Mem'l Park of Dallas, 696 S.W.2d 423, 425 (Tex. App. 1985). Plaintiff relies on a single appellate case finding the statute required a buyer to notify only his immediate seller. See Vintage Homes, Inc. v. Coldiron, 585 S.W.2d 886, 889 (Tex. App. 1979). The Texas Supreme Court has noted the split among the lower appellate courts, but has declined to resolve it. See Compaq Computer Corp. v. Lapray, 135 S.W.3d 657, 674 n. 14 (Tex. 2004).

The Court finds that, if the Texas Supreme Court were confronted with this issue, it would adopt the majority position, and find notice to a remote manufacturer to be a prerequisite to suit. Accordingly, plaintiff's warranty claims are barred as a matter of law.

III. Conclusion

For the foregoing reasons, defendants are entitled to summary judgment. Their motion [Docket No. 12] is granted.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  August 25, 2010

s/ James M. Rosenbaum<br>
JAMES M. ROSENBAUM<br>
United States District Judge